UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| GREGORY RYAN WEBB, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6:19-CV-070-CHB |
| | ) | |
| v. | ) | |
| | ) | |
| HARLAN COUNTY, KENTUCKY, | ) | **MEMORANDUM OPINION** |
| ET AL., | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

**\*\*\* \*\*\* \*\*\* \*\*\***

Gregory Ryan Webb was recently a prisoner at several different detention centers in Kentucky, including but not limited to the Harlan County Detention Center (HCDC). Proceeding without a lawyer, Webb filed a civil rights complaint with the United States District Court for the Western District of Kentucky. [R. 1]. That court conducted an initial review of Webb's complaint pursuant to 28 U.S.C. § 1915A, permitted some of his claims to proceed, dismissed some of his other claims, and severed his remaining claims—regarding his incarceration at the HCDC—from the initial action. [R. 3]. The Western District then opened a new civil action to house those remaining HCDC-related claims and transferred that action to this Court because Harlan County, Kentucky is in this judicial district. [*Id.* at 15-16].

Webb's claims regarding the conditions of his confinement at the HCDC are now before this Court on initial screening pursuant to 28 U.S.C. § 1915(e)(2). For the reasons set forth below, the Court will dismiss most of Webb's claims, but it will allow two of his Eighth Amendment deliberate indifference claims to proceed.

## I.

Webb's factual allegations are very hard to follow. That is because his 11-page complaint [R. 1] is accompanied by a 37-page submission that contains numerous overlapping factual allegations and many superfluous details. [*See* R. 1-1]. Webb also often fails to clearly explain what each named defendant did or failed to do to cause him harm. [*See id.*]. That said, Webb is afforded latitude as a *pro se* litigant, and, as a result, the Court has tried to identify those factual allegations that relate to the conditions of his confinement at the HCDC.

Webb alleges that he was first transferred to the HCDC in early December 2017 and, shortly thereafter, "started on the HCDC inmate work program." [R. 1-1 at 15]. Webb alleges that, as part of this program, he and his fellow inmates were required to use weed eaters without the manufacturer's safety guards because those guards "were all purposely removed by HCDC." [*Id.*]. As a result, Webb alleges that "every day I weedeated, it caused little whelps and/or sores on my face and/or neck." [*Id.*].

Webb then alleges that he "was told that if I complained I'd go to 'the hole,' or isolation." [*Id.*]. Still, Webb says he complained to his immediate supervisor, "Deputy Ken," who told him that he could either "keep working or quit." [*Id.*]. Webb claims that when he asked what would happen if he quit, Deputy Ken told him that he would "go to the hole." [*Id.*]. Webb then alleges that he wrote grievances to the Department of Corrections and verbally complained "to a D.O.C. representative that visited me in iceolation [sic]," suggesting that Webb was, in fact, placed in isolation at some point. [*Id.*]. Webb also says, "I believe I was kept in cell P-3 for longer due to my verbal grievance to the D.O.C. rep who did nothing" [*Id.*], and he later suggests that cell P-3 is part of the detention center's isolation unit. [R. 1-1 at 19].

Webb also separately complains that prison officials improperly placed him in medical isolation for a 22-day period. [*See* R. 1-1 at 19-20]. Webb acknowledges that he "wrote an electronic grievance that included a request to see someone for mental health." [R. 1-1 at 19]. Webb, however, suggests that prison officials erroneously claimed that he had written that he was "unstable" and then cited that statement as the reason why he was placed in medical isolation. [*See id.* at 19-20]. Webb implies that this was a pretext, saying, "I 100% believe the HCDC Officials used this to lock me down over grievances I wrote." [*Id.* at 19]. Ultimately, Webb appears to be referencing his grievances regarding the inmate work program and his "not receiving legal copies." [*See id.*].

In addition to Webb's allegations regarding his time in isolation, he claims more generally that the detention center was not "legal friendly." [R. 1-1 at 17]. Webb suggests he was working on his "McCracken Criminal Case and Complaint to the Kentucky Bar Association" and complains that the HCDC did not have a law library. [*Id.*]. Webb also alleges that prison officials would not let him retrieve unspecified legal documents from his "stored jail property" and refused to provide him with copies, a notary service, stamps, and large manila envelopes. [*Id.*]. Webb claims that he tried to file a document with the Kentucky Court of Appeals but that it was returned to him because the envelope did not have enough postage. [*Id.*]. Webb also says, "I was denied a Criminal Attorney and with no law library and information, my [Kentucky Court of Appeals] Motion was returned where I mailed it to the wrong place." [*Id.*].

Webb also complains about the general conditions at the HCDC. [*See* R. 1-1 at 20-24]. Among other things, Webb alleges that he was only permitted 50 minutes of outside exercise during his time in isolation, "was offered a shower at least 4 days per week where the water wasn't hot and . . . was allowed 10-25 minutes max," and was given "a cordless phone that wouldn't work."

[*Id.* at 20, 21, 24]. Webb also alleges that a specific prison official—Deputy Jailer Justin Howard—stole his "bottom thermals, then my top thermal, [and] my shampoo, all on different occasions while in D block." [*Id.* at 34].

Finally, Webb alleges that, in February 2018, he "verbally requested both a sick call and dental request," told a nurse that he had "an infection in my head that's possibly from my chipped/broken tooth," and requested antibiotics. [R. 1-1 at 35]. Webb, however, claims that Nurses Tammy Halcomb and Jeff Osborne both denied him treatment, telling him that he could "have [his] family make arrangements with the local dentist and that the jail would then take [him] once the appointment was made." [*Id.* at 35-36].

In addition to setting forth the foregoing factual allegations, Webb names multiple defendants in his complaint, including Harlan County, HCDC Jailer Burkhart, Chief Deputy Jailer Derrick Moore, Deputy Jailer Whitman, Deputy Jailer Justin Howard, Deputy Jailer Blake, Captain Dan Howard, Southern Health Partners (a medical contractor at the HCDC), Nurse Halcomb, and Nurse Osborne. Webb then suggests that these defendants ran afoul of numerous constitutional provisions, including but not limited to the First, Eighth, and Fourteenth Amendments. Ultimately, Webb asks the Court to grant him several different forms of relief, including declaratory relief, injunctive relief, and money damages.

Webb's complaint is now before the Court on initial screening pursuant to 28 U.S.C. § 1915(e)(2).

## II.

As an initial matter, Webb's complaint is very difficult to follow and does not comply in any meaningful way with the Federal Rules of Civil Procedure. Indeed, Webb's complaint runs afoul of Rule 8 because it does not contain "a short and plain statement of the claim showing that

-4-

[he] is entitled to relief" and fails to include allegations that "are simple, concise, and direct." Fed. R. Civ. P. 8(a)(2), (d)(1). Instead, Webb's submissions include numerous hard-to-follow pages that contain overlapping factual allegations and repetitive claims for relief. [*See* R. 1-1 at 1-37]. To be sure, Webb does number each of his claims, but many of those claims are either difficult to understand or simply repetitive. [*See id.*]. Plus, while Webb begins each claim by referring to one or more of the named defendants, he does not consistently tie his factual allegations to those defendants. [*See id.*]. In other words, Webb often does not clearly explain what each named defendant did or failed to do to cause him harm and, as a result, his legal claims are hard to track. Still, since Webb is a *pro se* litigant, he is afforded latitude and, therefore, the Court has attempted to identify and screen those legal claims that it can follow.

*A. Eighth Amendment Claims*
*Related to the HCDC Work Program*

Webb first appears to be asserting an Eighth Amendment claim against Harlan County based on the detention center's alleged policy of removing the manufacturer's safety guards from the weed eaters used in the inmate work program. However, even assuming this could state an Eighth Amendment claim, Webb is not entitled to the relief he is seeking against Harlan County. That is because Webb is only pursuing injunctive relief against the county, not money damages. In fact, Webb specifically says, "I'm requesting an injunction requesting Harlan County to no longer allow Harlan CDC to force Inmates who are in danger to be forced to stay in the same housing or work area where the danger is present as HCDC believes it's ok to do so." [R. 1 at 7]. Webb then indicates that he is not seeking money damages against Harlan County, saying, albeit in a somewhat muddled way, that he is pursuing "NO financial request for the actual counties." [*Id.* at 9]. Since Webb is no longer confined at the HCDC, his claim for injunctive relief against

Harlan County is moot. *See, e.g., Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996). Thus, the Court will dismiss that claim.

Webb also suggests that this Eighth Amendment claim "refers to . . . B.J. Burkhart, Dan Howard, and Derrick Moore of Harlan CDC." [R. 1-1 at 15]. But Webb does not actually link his factual allegations regarding the weed eaters to any of these defendants and, thus, it is not clear what these specific defendants did or failed to do to cause him harm. Therefore, as currently pled, Webb's allegations fail to state Eighth Amendment claims against the listed defendants. Thus, the Court will dismiss those claims.

### B. First Amendment Retaliation Claims Related to the HCDC Work Program

Webb also appears to be asserting First Amendment retaliation claims related to his complaints about the HCDC work program. Indeed, Webb implies that he complained to prison officials about the weed eaters and, in response, they placed him in isolation. [R. 1-1 at 15]. Webb also says he believes he was kept in the isolation unit "longer due to my verbal grievance to the D.O.C. rep who did nothing." [*Id.*].

In order to state a retaliation claim, a plaintiff must allege that: (1) he engaged in protected conduct; (2) the defendant took action against him sufficiently adverse to deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the defendant's adverse action was motivated at least in part by the plaintiff's protected conduct. *King v. Zamiara*, 680 F.3d 686, 694 (6th Cir. 2012).

Here, although Webb alleges some relevant facts in his complaint, he does not clearly tie his allegations to any of the defendants listed in the complaint. At most, Webb highlights a conversation he had with "Deputy Ken," who allegedly told Webb that he would "go to the hole" if he quit his job, and he then suggests that he was placed in isolation after submitting a written

complaint to the state Department of Corrections. [R. 1-1 at 15]. But Webb does not list "Deputy Ken" as a defendant, and he does not state facts specific to any individuals named as defendants. Thus, Webb has not stated a plausible retaliation claim. *See Boxill v. O'Grady*, No. 18-3385, 2019 WL 3849559, at *3 (6th Cir. Aug. 16, 2019) (holding that a plaintiff failed to state a plausible retaliation claim against four defendants because her allegations did not state facts specific to the named defendants).

To be sure, on the top of the page that Webb asserts his retaliation claim, he "refers to Harlan County, B.J. Burkhart, Dan Howard, and Derrick Moore of Harlan CDC." [R. 1-1 at 15]. But, as the United States Court of Appeals for the Sixth Circuit has said, "Summary reference to a single, five-headed 'Defendants' does not support a reasonable inference that *each* Defendant is liable for retaliation." *Boxhill*, 2019 WL 3849559, at *3 (emphasis in original). After all, the Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right." *Heyne v. Metro Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011) (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)). Since Webb did not clearly allege what each defendant did or did not do to cause him harm, the Court will dismiss his retaliation claims related to the HCDC work program.

### C. First Amendment Retaliation Claims Related to Webb's Time in Medical Isolation

Webb then appears to assert even more First Amendment retaliation claims related to his time in medical isolation. To be sure, Webb acknowledges that he "wrote an electronic grievance that included a request to see someone for mental health." [R. 1-1 at 19]. Webb, however, suggests that prison officials erroneously claimed that he had written that he was "unstable" and then cited that statement as the reason why he was placed in medical isolation. [*See id.* at 19-20]. Webb

implies that this was a pretext, saying, "I 100% believe the HCDC Officials used this to lock me down over grievances I wrote." [*Id.* at 19]. Ultimately, Webb appears to be referencing his grievances regarding the inmate work program and his "not receiving legal copies." [*See id.*].

Although Webb suggests that his allegations apply "to B.J. Burkhart, Dan Howard, Derrick Moore, Nurse Jeff Osborne, Nurse Tammy Halcomb(s), and Southern Health Partners at Harlan CDC" [*id.* at 19], he has failed to state a plausible retaliation claim against any of these defendants. For starters, Webb does not clearly allege that any of these defendants took specific action against him; in fact, it is not even clear which of these defendants, if any, placed Webb in medical isolation. Moreover, Webb does not clearly allege that any of the listed defendants' actions were motivated by his decision to file grievances regarding either the inmate work program or his inability to receive "legal copies." In fact, according to Webb, several defendants specifically cited his statements regarding his mental stability as the reason why he was placed in medical isolation. [*See id.* at 19-20]. While Webb implies that this was all a pretext, that conclusory allegation, without more, is simply not enough to state retaliation claims against all the listed defendants.[1] *See Boxhill*, 2019 WL 3849559, at *3 (recognizing that the plaintiff must allege, with particularity, facts that demonstrate what each defendant did or failed to do to cause him harm). Thus, the Court will dismiss Webb's retaliation claims related to his time in medical isolation.

### D. First Amendment Claim
### Alleging Denial of Access to the Courts

Webb next appears to be asserting a First Amendment claim alleging a denial of access to the courts. After all, Webb complains that the HCDC was not "legal friendly," he did not have

---

[1] At one point, Webb does allege that he overheard a conversation between "Officer Ken" and "Officer/Deputy Joey" in which "Officer/Deputy Joey" indicated that Webb and another inmate were "locked down" in order "to prevent them from causing any more trouble." [R. 1-1 at 20]. Webb, however, does not actually list either "Officer Ken" or "Officer/Deputy Joey" as a defendant, and "Officer/Deputy Joey's" alleged, vague statement is certainly not enough to state retaliation claims against those defendants Webb does name in his complaint.

access to a law library, and officials would not let him retrieve unspecified legal documents from his "stored jail property" and refused to provide him with copies, a notary service, stamps, and large manila envelopes. Webb also claims, among other things, that he tried to file a document with the Kentucky Court of Appeals but that it was returned to him because the envelope did not have enough postage. [R. 1-1 at 17].

In order to state a denial of access to the courts claim, a plaintiff must clearly allege an actual injury to a nonfrivolous legal claim. *See Williams v. Wright*, No. 2:19-cv-040-WOB, 2019 WL 2236257, at *3 (E.D. Ky. May 23, 2019) (citing *Lewis v. Casey*, 518 U.S. 343, 353-55 (1996)). "Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline." *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005).

Here, Webb has not clearly alleged an actual injury. To be sure, Webb references a specific criminal case in McCracken County, Kentucky and says at one point that he "was denied a Criminal Attorney." [R. 1-1 at 17]. However, Webb does not explain how the alleged lack of legal resources or material at the HCDC stopped him from obtaining counsel in his criminal case. Moreover, the public record in Webb's McCracken County criminal case shows that he *was* represented by an attorney from the Kentucky Department of Public Advocacy and that he eventually pled guilty to multiple charges. *See Commonwealth v. Webb*, No. 15-CR-00012 (McCracken Co. Cir. Ct. 2016). And while Webb also claims that the Kentucky Court of Appeals returned a document to him because his envelope did not have enough postage, he does not clearly allege that he missed a court-imposed deadline or suffered some other actual prejudice. Therefore, as currently pled, Webb's allegations fail to state a First Amendment claim based on a denial of access to the courts. Thus, the Court will dismiss that claim.

*E. Eighth Amendment Claim*
*Regarding General Conditions of Confinement*

Webb also appears to be asserting an Eighth Amendment claim related to the general conditions at the HCDC. [*See* R. 1-1 at 20-24]. Among other things, Webb alleges that he was only permitted 50 minutes of outside exercise during his time in isolation, "was offered a shower at least 4 days per week where the water wasn't hot and . . . was allowed 10-25 minutes max," and was given "a cordless phone that wouldn't work." [*Id.* at 20, 21, 24].

The Court has reviewed Webb's factual allegations, but, as currently pled, they are insufficient to state a viable Eighth Amendment claim. While prison officials must certainly provide inmates with humane conditions of confinement, including adequate food, clothing, and shelter, the Eighth Amendment does not mandate comfortable prisons. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). As the Sixth Circuit has explained, "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). Here, Webb's allegations, including his statements regarding his limited outside exercise time, shower temperature and length, and access to a working cordless phone, simply do not rise to the level of cruel and unusual punishment. As a result, the Court will dismiss Webb's general Eighth Amendment conditions-of-confinement claim.

*F. Fourteenth Amendment Due Process Claim*
*Alleging the Loss of Property*

Webb next appears to be asserting a Fourteenth Amendment due process loss of property claim, at least against Deputy Jailer Justin Howard. After all, Webb alleges that Deputy Jailer Howard stole his "bottom thermals, then my top thermal, [and] my shampoo, all on different occasions while in D block." [R. 1-1 at 34].

That said, claims for deprivation of property are generally not actionable under 42 U.S.C. § 1983. As this Court has explained, "A plaintiff does not allege a viable due process claim based on either the negligent deprivation of personal property, . . . or the intentional but unauthorized deprivation of property, . . . unless state court remedies are inadequate to address the wrong." *Borell v. Dean*, No. 5:18-cv-525-GFVT, 2018 WL 6182057, at *3 (E.D. Ky. Nov. 27, 2018) (internal citations omitted). To assert such a claim, the plaintiff must both plead and prove that state remedies for redressing the wrong are inadequate. *See Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999). Here, Webb has failed to clearly allege that available state remedies are inadequate to redress his claimed property deprivation. In the absence of such allegations, the Court declines to reach that conclusion. Thus, the Court will dismiss Webb's Fourteenth Amendment due process loss of property claim.

## G. Eighth Amendment Claims
### Alleging Deliberate Indifference to Serious Medical Needs

Webb also appears to be claiming that certain defendants displayed a deliberate indifference to his serious medical needs in violation of his Eighth Amendment rights. Indeed, Webb alleges that, in February 2018, he "verbally requested both a sick call and dental request," told a nurse that he had "an infection in my head that's possibly from my chipped/broken tooth," and requested antibiotics. [R. 1-1 at 35]. Webb, however, claims that Nurses Halcomb and Osborne both denied him treatment, telling him that he could "have [his] family make arrangements with the local dentist and that the jail would then take [him] once the appointment was made." [*Id.* at 35-36]. Ultimately, Webb says, "I was denied medical treatment at HCDC," and he indicates that he is pursuing this claim against Nurses Halcomb and Osborne, as well as Southern Health Partners (the nurses' direct employer and the medical contractor at the HCDC) and HCDC Jailer Burkhart. [*Id.* at 36].

As an initial matter, the Court will dismiss Webb's Eighth Amendment claim against Jailer Burkhart. That is because Webb does not allege that Jailer Burkhart was personally involved in his medical care. Instead, Webb simply says he submitted a written grievance to Jailer Burkhart but that "he still didn't receive medical treatment." [R. 1-1 at 36]. The Sixth Circuit, however, has made it clear that "the denial of a grievance or the failure to act upon the filing of a grievance is insufficient to establish liability under § 1983." *Johnson v. Aramark*, 482 F. App'x 992, 993 (6th Cir. 2012). And to the extent that Webb argues that Jailer Burkhart is liable for the alleged unconstitutional acts of other officers, "§ 1983 liability must be based on more than respondeat superior, or the right to control employees." *Id.* (citing *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). Thus, Webb has failed to state an Eighth Amendment deliberate indifference claim against Jailer Burkhart.

The Court will also dismiss Webb's Eighth Amendment claim against Southern Health Partners. To be sure, Southern Health Partners may contract with the HCDC to provide medical services to its inmates. However, Webb cannot base § 1983 liability against Southern Health Partners on the doctrine of respondeat superior or vicarious liability, *see Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996), but must instead show "some policy that caused a deprivation of [Plaintiff's] Eighth Amendment rights." *Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 464 (6th Cir. 2001). Webb has failed to allege, must less demonstrate, any such policy. As a result, Webb has failed to state an Eighth Amendment deliberate indifference claim against Southern Health Partners.

That said, the Court will allow Webb to go forward on his Eighth Amendment claims against Nurses Halcomb and Osborne, who he sues in their individual capacities. [R. 1 at 9]. At bottom, Webb appears to be alleging that these defendants denied him medical care and, thus,

displayed a deliberate indifference to his serious medical needs in violation of his Eighth Amendment rights. [R. 1-1 at 35-36].[2]

## H. *Other Miscellaneous Claims*

Finally, the Court recognizes that Webb may be attempting to assert other claims for relief. For example, Webb repeatedly mentions something about "losing at least 12 days of work credit" and suffering $2,000 in damages. [*See* R. 1-1 at 16, 22]. Webb also cites a number of other constitutional and statutory provisions that the Court has not previously discussed. However, Webb has neither clearly explained the nature of these claims nor identified precisely which allegations are tied to which defendants. Thus, to the extent that Webb is attempting to assert other claims for relief, the Court will dismiss those other miscellaneous claims without prejudice.

### III.

In light of the foregoing analysis, it is **ORDERED** as follows:

1. The following claims are **DISMISSED** for failure to state a claim upon which relief may be granted: Webb's Eighth Amendment claims related to the HCDC work program; his multiple First Amendment retaliation claims; his First Amendment claim alleging a denial of access to the courts; his Eighth Amendment claim regarding the general conditions of confinement at the HCDC; his Fourteenth Amendment due process claim alleging the loss of property; and his Eighth Amendment deliberate indifference claims against HCDC Jailer Burkhart and Southern Health Partners.

---

[2] In this part of Webb's complaint, he tries to assert another retaliation claim, saying, in a rather conclusory way, "It's clear to me that I was retaliated against for filing grievances and for filing Section 1983 claim that HCDC jail and medical staff knew about." [R. 1-1 at 36]. But Webb does not specifically identify the grievances and lawsuit to which he is referring. He also does not clearly allege who specifically knew about those grievances and lawsuit, other than referring generically to "jail and medical staff." In short, Webb's allegations are very vague, and they are simply not enough to state a retaliation claim against any of the named defendants.

2. As explained in section H above, to the extent that Webb is attempting to assert other miscellaneous claims for relief, those claims are **DISMISSED** without prejudice.

3. At this point, Webb may **PROCEED** on his Eighth Amendment deliberate indifference claims against Nurses Halcomb and Osborne, who he sues in their individual capacities. However, the Clerk's Office shall **TERMINATE** all the other defendants in this case.

4. The Deputy Clerk shall **PREPARE** two "Service Packets" for service upon the United States of America. Those Service Packets shall include:

   a. a completed summons forms;

   b. Webb's complaint [R. 1 and R. 1-1];

   c. this Memorandum Opinion and Order; and

   d. a completed USM Form 285.

5. The Deputy Clerk shall **SEND** the Service Packets to the USMS in Lexington, Kentucky, and note the date of delivery in the docket.

6. The USMS shall make arrangements with the appropriate officials at the Harlan County Detention Center to personally serve Nurse Tammy Halcomb and Nurse Jeff Osborne with the Service Packets at:

   > Harlan County Detention Center
   > 6000 Highway 38
   > Evarts, Kentucky 40828

7. Finally, Webb must immediately advise the Clerk's Office of any change in his current mailing address. If Webb fails to do so, the Court may dismiss his case.

This the 23rd day of October, 2019.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY